IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERNEST PARSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 15-325 (MN) |
| | ) |
| DAVID PIERCE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Ernest Parson, SCI Chester, Chester, Pennsylvania; Michael Manley and David Stevenson, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiffs.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants David Pierce and Christopher Senato.

February 28, 2019
Wilmington, Delaware


**NOREIKA, U.S. District Judge:**

Plaintiffs Ernest Parson ("Parson"), Michael Manley ("Manley"), and David Stevenson ("Stevenson") (collectively "Plaintiffs"), former and current inmates at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq*. ("RLUIPA"). They proceed *pro se* and have paid the filing fee. Stevenson moves for summary judgment (D.I. 75) as do Defendants David Pierce ("Pierce") and Christopher Senato ("Senato") (together "Defendants") (D.I. 76). The matters have been fully briefed.

## I. BACKGROUND[1]

On September 12, 2012, Plaintiffs, who identify as Muslim, as well as other inmates, who identify as Catholic and Jewish, commenced this action alleging violations of their right to practice their respective religions. *See Desmond v. Phelps*, C.A. No. 12-1120-RGA (D. Del.). In light of the divergent religions of Plaintiffs in that case, and upon Defendants' motion, the claims of Parson, Manley and Stevenson were severed from C.A. No. 12-1120-RGA, and the severed matter was opened and given a new case number on April 22, 2015. (*See* D.I. 1). When C.A. No. 12-1120-RGA was filed, Plaintiffs were housed "in and/on Max-Death Row," at VCC and Stevenson and Manley were death sentence inmates. (D.I. 66 at 3).

The corrected Amended Complaint (D.I. 66) contains nine counts. Two counts are brought by all three Plaintiffs, while the remaining counts are brought by then death row inmates Manley and Stevenson. Plaintiffs allege Defendants placed unnecessary burdens on the practice

---

[1] The facts set forth relate only to the unexhausted claims of Stevenson and Manley. As discussed in III.A., Plaintiffs failed to exhaust their administrative remedies for most claims they raised as is required by the Prison Litigation Reform Act ("PLRA").

of their religion in violation of the First Amendment of the United States Constitution and RLUIPA.

Counts 1 and 3 are raised by all Plaintiffs and allege: (1) denial of a Halal diet (Count 1); and (2) denial of access to disposable razors and/or allowing Plaintiffs to purchase hair removal products from the Commissary (Count 3). Counts 2, 4, 5, 6, 7, 8, and 9 are raised by Manley and Stevenson and allege: (1) prohibition of more than three books in a cell at one time (Count 2); (2) the lack of congregational worship opportunities (Count 4); (3) prohibition against possessing more than two towels, wash cloths, and bars of soap (Count 5); (4) denying nutritionally adequate diet during the holy month of Ramadan (Count 6); (5) prohibition from engaging in individual and group prayer outside the cell or in open areas (Count 7); (6) prison rules prevent the Muslim call to prayer (Count 8); and (7) the lack of Halal commissary items (Count 9). Plaintiffs seek injunctive and declaratory relief.

Plaintiffs housing assignments have changed since the filing of the original complaint. Parson was transferred from VCC to SCI Chester in Chester, Pennsylvania.[2] (D.I. 78 at 23-24; D.I. 84). Manley has been moved from the Security Housing Unit ("SHU") to the Victor Building which he understands is a medium/minimum building that houses medium-classified and minimum-classified inmates. (*Id*. at 17). Stevenson was first housed in the "old max," then moved to SHU, then moved to medium-high housing unit ("MHU") and is now housed in minimum security. (D.I. 60 at 24; D.I. 78 at 4).

Count 3 alleges that a sincerely held belief of the Islamic faith is the removal of body hair, shortening the mustache, and clipping the nails, and that the VCC has abandoned its policy of

---

[2] As will be discussed, Parson did not exhaust his administrative remedies, and all of his claims will be dismissed.

giving Muslim inmates access to disposable razors and/or allowing them to purchase hair removal products from the commissary. (D.I. 66 at 8). In their current VCC housing assignments, Manley and Stevenson are permitted razors within prison rules.[3] Prior to his transfer to the Victor Building, Manley testified that the prohibition of razors was an issue. (D.I. 60 at A-41). Manley testified that he was given cream as an alternative, but it burned his skin. (*Id*. at A-42). Manley testified that he suggested the option of providing inmates with bladeless battery powered trimmers. (*Id*. at A-43). In their current housing assignments, Manley and Stevenson cannot possess trimmers, but they are provided razors three days a week which they can use for a few hours before returning them. (D.I. 78 at SA-136). According to Stevenson, that is not done in SHU or MHU. (*Id*.). Stevenson testified that Magic Shave hair removal cream is sold at the commissary, but is "pretty harsh" and only formulated for the face. (*Id*. at SA-137-138).

According to former warden Pierce, VCC inmates housed in SHU and MHU are prohibited from possessing razors. (D.I. 60 at A-78). The policy to prohibit razors became effective sometime in 2009-2010 after a number of incidents where inmates used razors to assault other inmates. (*Id*.). Following implementation of the policy there was a significant reduction in the amount of assaults with razors at VCC. (*Id*. at A-79). Another reason for the policy is to reduce self-harm in the facility, including harm from swallowing dangerous objects such as razors. (*Id*.). At the time of Pierce's affidavit, inmates housed on the compound (*i.e.*, not maximum security housing) were permitted to have and use razors.[4] (*Id*.). Inmates in SHU and MHU are permitted to purchase a depilatory cream from the commissary. (*Id*.).

---

[3]  Only Manley exhausted his administrative remedies for the access to razor issue.

[4]  Prior to 2017, inmates housed in the compound could purchase disposable razors at the commissary. (D.I. 78 at SA-137). The policy changed following the February 2017 hostage incident that resulted in the death of a correctional officer. (*Id*.).

3

Count 6 alleges that Plaintiffs were denied the basic necessities of a nutritionally adequate diet during the holy month of Ramadan from 2011 through 2015.[5] (D.I. 66 at 11). Stevenson did not provide any specific testimony regarding the alleged lack of a nutritionally adequate diet during Ramadan, although he testified that he wanted Senato to "approve and set up a Halal program for the Muslims." (D.I. 60 at A-13). Manley testified that the "one" deficiency in the food is that "there's no Halal diet." (*Id.* at A-33). Manley also, however, testified that "the amount of food served is also a problem" and "the quality of the food served is a problem." (*Id.* at A-38).

Senato is VCC's food service director and during the relevant time-frame oversaw the VCC's food service operation. (*Id.* at A-83). He did not draft the religious diet policy or provide input into the policy and lacks authority to change the religious diet policy at VCC. (*Id.*). According to Senato, the DOC offers meal accommodations to Muslim inmates during Ramadan. (*Id*. at A-84). "The Ramadan diet is not a different diet *per se*, but a bagged breakfast meal and the regular dinner meal with additional vegetables added as a supplement." (*Id*.). Ramadan meals are served before sunrise and after sunset because observant Muslims fast during the day and during the regular prison lunch and dinner hours. (*Id*.). The prison administrator and staff must serve Ramadan meals after sundown and those meals are prepared and placed in insulated clamshell trays until they are served. (*Id*.). According to Senato, approximately 430 inmates observe Ramadan, and the monthly observance of Ramadan results in nearly 13,000 meals that are served outside of the normal routine of prison food service. (*Id*.).

---

[5] Both Manley and Stevenson exhausted their administrative remedies as to this issue.

Through the years Manley and Stevenson have written letters, made complaints, and submitted grievances raising religious issues. Stevenson wrote to VCC Chaplain Frank Pennell ("Pennell") on February 13, 2011 and requested a volunteer Imam be allowed to provide Stevenson religious counseling.[6] (D.I. 46 at 18). The request was denied. (*Id*. at 23). Manley and Stevenson also submitted a petition for an Islamic Imam. (*Id*. at 19). Stevenson submitted a grievance on February 20, 2011, No. 220992, making the request for the volunteer Imam, it was rejected, Stevenson appealed, and the matter was resolved. (D.I. 46-1 at 1-3; D.I. 60 at A-86-93). Manley submitted two grievances, No. 236832 and No. 225819, and asked for the use of electronic hair clippers to shave his body since razors were unavailable to him. (*Id.* at A-94-96). Grievance No. 236832, submitted December 18, 2011, was deemed non-grievable as a duplicate and noted that the issued had been addressed and ruled on by the Bureau Chief. (*Id*. at A-95). Grievance No. 225819 is not contained in the record.

On January 3, 2012, Stevenson wrote to VCC Security Housing Unit ("SHU") counselor and made a request to serve Muslim inmates Halal meals and add Halal items to the Commissary. (D.I. 46 at 24). Pennell responded to the request on January 10, 2012 and advised Stevenson of the current diet provided for Muslim inmates and that Halal items were currently not available in the Commissary. (*Id*. at 25). The same day Stevenson wrote to then VCC warden Perry Phelps ("Phelps") and made the same request. (*Id*. at 26). Stevenson received a response on June 6, 2012. (*Id*. at 27).

---

[6] Stevenson's exhibits include requests, complaints, and grievances submitted or filed by other inmates who are not parties to this case. (D.I. 46 at 5-17; 20-22). They are not considered by the Court.

5

On July 20, 2012, inmate Idris Young submitted a group grievance, No. 249492, that include Manley and Stevenson, complaining that inadequate food portions were being served during Ramadan. (D.I. 46-1 at 4). The outcome of that grievance is unknown.

On July 22, 2012, Manley submitted a group grievance, No. 249493, that included Stevenson, complaining that breakfast had arrived late every day during Ramadan. (D.I. 60 at A-97-109). The matter was resolved. On July 26, 2012, Stevenson submitted a grievance, No. 249870, requesting a time certain for the morning Ramadan meal to be served. (*Id*. at A-110-115). The grievance was returned as non-grievable and as a duplicate noting that Stevenson was included in grievance No. 249493. (*Id.* at A-115). On July 29, 2012, Manley submitted another group grievance, No. 249953, complaining about the lateness of breakfast during Ramadan. (*Id*. at A-116-128). The grievance was resolved.

On "January 10, 2013" [sic], Coupe advised Stevenson that his office had received his January 1, 2014 correspondence requesting additional hours to view religious materials via the institutions' broadcasting network and advised Stevenson to direct his concerns at the institutional level. (D.I. 46 at 33).

In August of 2013, Stevenson submitted a grievance, No. 272140, noting that razors are banned for inmates housed in SHU and Death Row and seeking a way to remove body hair, either by razor or depilatories. (*Id*. at 28-29). The grievance was returned, noting that the grievance exceeded the seven-day period from the date of occurrence, the request was not processed through the grievance procedure (*i.e*., non-grievable), and per the Housing Rules inmates "are to tend to their own spiritual needs" "Chaplain staff is available for assistance." (*Id.* at 30). On January 13, 2014, Stevenson was advised by then Delaware Department of Correction ("DOC")

6

Commissioner Robert M. Coupe that possession of razors in SHU has been administratively determined to be a safety hazard. (*Id*. at 32).

Stevenson submitted a grievance on June 14, 2016, No. 340374, complaining that breakfast was not being served early enough during Ramadan. (D.I. 46-1 at 7-9). The grievance was returned as unprocessed. (*Id*. at 9). On March 23, 2017, Stevenson submitted a grievance, No. 361095, to have Islamic services broadcast via internet Channel 19, because as an MHU inmate he was not allowed to physically attend services. The outcome of this grievance is unknown. (*Id*. at 11-12).

On June 18, 2017, Stevenson submitted a grievance, No. 371969, for the VCC to offer Halal meals and commissary products. (D.I. 64 at 35). Stevenson submitted another grievance, No. 371968, on June 18, 2017, complaining that "Magic Shave" sold in the commissary did not met his needs. (*Id*. at 39-40). Both grievances were returned as unprocessed and Stevenson was advised to correspond with the VCC support services manager. (*Id*. at 37, 41).

Stevenson moves for summary judgment on the grounds that: (1) Defendants placed a substantial burden on his ability to exercise his religion; (2) Defendants' policies do not further any compelling government interest; and (3) Defendants have not used the least restrictive means policy in denying Plaintiff's rights. (D.I. 75). Defendants move for summary judgment on the grounds that: (1) most of Plaintiffs' claims are barred for their failure to exhaust administrative remedies as required by the PLRA; (2) Halal diet claims should be dismissed because Plaintiffs are provided with Halal meal options; (3) Defendants have not violated the Free Exercise Clause of the First Amendment; (4) Defendants have not violated RLUIPA; (5) the shaving claims are moot; (6) the commissary and property allowance claims do not unduly affect Plaintiffs' ability to

7

practice their religion; and (7) many of the claims for prospective relief are moot given Parson's transfer to an out of state facility and Stevenson's and Manley's change of housing assignment.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The nonmoving party bears the burden to establish the existence of each element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson*, 477 U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

Neither Parson nor Manley filed an opposition to Defendants' motion for summary judgment. Regardless, the Court will not grant the entry of summary judgment without considering the merits of Defendants' unopposed motion. *See Stackhouse v. Mazurkiewicz*, 951

F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendants seek summary judgment on the grounds that Plaintiffs failed to exhaust their administrative remedies for the majority of the claims they raise. More particularly, Defendants contend: (1) there is no evidence that Parson filed any grievances with respect to religion or diet; (2) there is no evidence that Stevenson fully exhausted his administrative remedies prior to filing this lawsuit in 2012, and none of his grievances touch on the claims raised in the Amended Complaint; and (3) with the exception of the razor issue, there is no evidence that Manley exhausted his administrative remedies. Stevenson responds that he exhausted his administrative remedies as evidenced by relevant grievances and letters, and he is entitled to rely upon the grievances of other inmates because of a prohibition on duplicate grievances.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Under *Woodford v. Ngo*, 548 U.S. 81 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in

9

accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 88.

Failure to exhaust administrative remedies must be pled and proved by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). After the defendant establishes that the inmate failed to exhaust administrative remedies, the burden shifts to the inmate to show that such remedies were unavailable. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). Futility is no exception the PLRA's exhaustion requirement. *See Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

It is well-settled that the plaintiff inmate must exhaust his administrative remedies prior to filing a civil rights suit. *See Ahmed v. Dragovich*, 297 F.3d 201, 209, n.9 (3d Cir. 2002). "A prisoner may not satisfy the exhaustion requirement after the filing of his complaint." *Wallace v. Miller*, 544 App'x 40, 42 (3d Cir. 2013). In addition, an inmate cannot exhaust claims pending in court and then seek to cure non-compliance with § 1997e(a) by filing an amended complaint. *See Ahmed*, 297 F.3d at 209.

DOC administrative procedures provide for a multi-tiered grievance and appeal process. (*See* D.I. 60 at A-71-77, DOC Policy 4.4). First, the prisoner must file a grievance within seven days with the Inmate Grievance Chair for an attempt at informal resolution; second, if unresolved, the grievance is forwarded to the Resident Grievance Committee for hearing and recommendations which are forwarded to the warden or the warden's designee; and third, if unresolved, the matter is referred to the Bureau Grievance Officer who conducts the final level of review and makes a recommendation to the Bureau Chief of Prisons. (*Id*. at A-75-76). Decisions by the Bureau Chief of Prisons are final, not open to grievant interpretation, and not appealable. (*Id*. at A-76-77).

Plaintiffs raise the following issues and each Plaintiff must exhaust each issue they raise: denial of a Halal diet; denial of access to disposable razors and/or allowing Plaintiffs to purchase hair removal products from the Commissary; prohibition of more than three books in a cell at one time; the lack of congregational worship opportunities; prohibition against possessing more than two towels, wash cloths, and bars of soap; denying nutritionally adequate diet during the holy month of Ramadan; prohibition from engaging in individual and group prayer outside the cell or in open areas; prison rules prevent the Muslim call to prayer; and the lack of Halal commissary items.

There is no evidence of record that Parson exhausted his administrative remedies as required by the PLRA and, therefore, the Court will grant Defendants' motion for summary judgment as to Parson.

For Stevenson, the evidence of record indicates that he and Manley were part of a group grievance submitted by inmate Young, No. 249492 on July 20, 2012, complaining of inadequate food portions during Ramadan. While the outcome of the grievance is unknown, the Court construes the facts in the light most favorable to Stevenson and Manley and will proceed to discuss the merits of this issue. Stevenson failed to exhaust his administrative remedies as to all other claims raised. Other than the inadequate food portion grievance, the grievances submitted by Stevenson either raise issues not before the Court (*e.g.*, breakfast served late during Ramadan,[7] grievance Nos. 249493, 249870, 340374) and/or were submitted after September 12, 2012, when

---

[7] In his motion for summary judgment, Stevenson combines nutritious meals with serving meals on time during Ramadan. (D.I. 75 at 14). The issue of the timeliness of meal service during Ramadan is not raised in the Amended Complaint, and Stevenson may not amend his pleadings by adding new claims in his dispositive motions.

the initial complaint was filed (*e.g.*, No. 272140 submitted August 8, 2013; No. 361095 submitted March 23, 2017; No. 371969 submitted June 18, 2017; No. 371968 submitted June 18, 2017).

Stevenson did not submit grievances for many of the issues raised, and his letters requesting Halal meals, Halal items in the commissary, and additional hours to view religious materials fail to satisfy the DOC's grievance process. Nor may Stevenson meet the exhaustion requirement by submitting grievances after the filing of the initial complaint, through the filing of the Amended Complaint, or reliance upon grievances submitted by other inmates. After thoroughly reviewing the evidence submitted by the parties, the Court concludes that Stevenson failed to exhaust his administrative remedies as to all claims, except the inadequate food portions served during Ramadan. Therefore, the Court will grant-in-part and deny-in-part Defendants' motion for summary judgment on the exhaustion issue as to the claims raised by Stevenson.

As discussed above, Manley was part of the group grievance that raised the issue of inadequate food portions served during Ramadan. In addition, Defendants concede that Manley exhausted his administrative remedies on the issue of the access to razors or the use of hair removal products. While Manley submitted grievances regarding the lateness of breakfast during Ramadan, there is no evidence of record that he submitted grievances for any of the other claims he raised in this matter. After thoroughly reviewing the evidence submitted by the parties, the Court concludes that Manley failed to exhaust his administrative remedies as to all claims, except the inadequate food portions served during Ramadan and the access to razor issue. Therefore, the Court will grant-in-part and deny-in-part Defendants' motion for summary judgment on the exhaustion issue as to the claims raised by Manley.

Defendants will be granted summary judgment as to all claims raised by Parson and as to Counts 1, 2, 4, 5, 7, 8, and 9 raised by Stevenson and Manley for their failure to exhaust administrative remedies as required by the PRLA.

**B.     First Amendment 42 U.S. § 1983; RLUIPA 42 U.S.C. § 2000cc et seq.**

Plaintiffs raise religion claims under the First Amendment pursuant to 42 U.S.C. § 1983 and RLUIPA. Prisoners have a First Amendment right to practice their religion. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). This constitutional right is limited by valid penological objectives. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (finding "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security"). When alleged religious interference stems from a prison policy, the Supreme Court has outlined four factors that are relevant in determining the reasonableness of the regulation: (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest"; (2) whether the inmate has an "alternative means of exercising the right" at issue; (3) the burden that the accommodation would impose on prison resources; and (4) "the absence of ready alternatives." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

To state a claim under RLUIPA, an institutionalized person must allege a "substantial burden on [his] religious exercise." 42 U.S.C. § 2000cc-1. Under RLUIPA, "[a] plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington v. Klem*, 497 F.3d 272, 278 (3d Cir. 2007). If a prisoner plaintiff establishes a substantial burden on a sincerely held religious belief, the burden shifts to the defendant to show that the policy or practice furthers a compelling government interest and is the least restrictive means of doing so. *See Holt v. Hobbs*,

13

135 S. Ct. 853, 863 (2015). "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 135 S.Ct. at 864 (internal quotation marks and alterations omitted). "RLUIPA does not allow for the recovery of money damages; in other words, a RLUIPA plaintiff may seek only injunctive or declaratory relief." *Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017) (citation omitted). Finally, RLUIPA does not permit an action against a defendant in his individual capacity. *See Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

### 1. Razor Claims, Count 3

Count 3 alleges that a sincerely held belief of the Islamic faith is the removal of body hair, shortening the mustache, and clipping the nails, and that the VCC abandoned its 30-year policy of giving Muslim inmates access to disposable razors and/or allowing them to purchase hair removal products from the commissary, without reason or justification or religious exception. (D.I. 66 at 8). Only Manley exhausted his administrative remedies as to Count 3. Defendants move for summary judgment on the grounds that the access to razor claim raised in Count 3 is moot given Manley's transfer from SHU to the Victor Building. As Manley acknowledged, unlike when he was housed in SHU, his current housing assignment in Victor Building allows him access to a razor three times a week.

Setting aside Defendants' position that the claim is moot, no reasonable jury could find for Manley on the merits. The evidence of record does not support a finding that Defendants' policy of not allowing inmates housed in SHU to possess razors substantially burdened Manley's ability to practice of their religion in light of the fact that he was provided an alternate means of removing

14

body hair. Indeed, SHU inmates are allowed to purchase hair removal cream from the Commissary. As a result, no reasonable jury could find for Manley on the RLUIPA claim.

Similarly, no reasonable jury could find for Manley on the § 1983 First Amendment free exercise claim. In Pierce's unrefuted declaration, he provided a legitimate penological interest to support the VCC's policy of not allowing SHU inmates to possess razors (reducing inmate assaults and preventing inmate self-harm) while at the same time providing SHU inmates with an alternative means of exercising their religion by affording them the opportunity to purchase hair removal cream from the commissary. Manley provided nothing to support the allegations that the policy was unreasonable. Based upon the evidence of record, the Court concludes that Defendants did not violated Manley's First Amendment free exercise rights.

Manley's new housing assignment could render moot his claim for injunctive relief. Because, however, he is still incarcerated at the VCC and is "still connected to the system" it is possible that he could again be housed in SHU. On the present record, though, Manley's future housing in SHU is speculative given the lack of evidence or even argument that Manley could again be confined to SHU. Manley received the relief he requested by virtue of his new housing assignment in Victor Building, and the issue does not present an issue capable of repetition, yet evading review for the relief sought. *See Banks v. Secretary Penn. Dep't of Corr.*, 601 F. App'x 101, 103 (3d Cir. 2015).

The "capable of repetition" exception applies when "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). "The exception . . . is narrow and available only in exceptional situations." *Rendell*, 484 F.3d at

15

241. Even had Manley speculated that he may someday be housed in SHU (and he did not), Manley did not establish a reasonable expectation that he, specifically, will be again subjected to the policy that does not allow inmates in SHU to possess razors. *See Parkell v. Danberg*, 833 F.3d 313, 333 (3d Cir. 2016). For these reasons, the Court will grant Defendants' motion for summary judgment as to Count 3.

### 2. Nutritionally Adequate Diet During Ramadan, Count 6

Both Manley and Stevenson exhausted their administrative remedies as to Count 6. Count 6 alleges that Muslims are served nutritionally inadequate diets during the month of Ramadan. There is no evidentiary support for this claim. Stevenson did not provide any testimony regarding his claim of the alleged lack of a nutritionally adequate diet during Ramadan. Manley testified that the deficiency in the food is that "there's no Halal diet" (D.I. 60 at A-33) and that "the amount of food served is also a problem" (*id.* at A-38) but did so in a general manner and did not connect it to the month of Ramadan. Nor is there evidence of Senato's personal involvement as to Count 6.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability under § 1983 a plaintiff must show that the individual defendant was personally involved in the alleged constitutional violations. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). The personal involvement requirement has been extended to RLUIPA claims. *See Lovelace v. Lee*, 472 F.3d 174, 193 (4th Cir. 2006) (dismissing RLUIPA claim against an assistant warden because it was the warden, not the assistant, who issued the challenged policy); *Corley v. City of New York*, 2017 WL 4357662 (S.D.N.Y. Sept. 28, 2017) (personal involvement is necessary component of a valid

RLUIPA claim); *Ciempa v. Jones*, 745 F. Supp. 2d 1171 1200 (N.D. Okla. 2010); *Goodvine v. Swiekatowski*, 594 F. Supp. 2d 1049, 1058 (W.D. Wis. 2009). Personal involvement can be established by showing that the defendant actually participated in the alleged violation or had knowledge and acquiesced in the violation. *Rode*, 845 F.2d at 1207. A plaintiff is required to prove personal involvement with "appropriate particularity." *Id.*

Senato was VCC's food service director and during the relevant time-frame oversaw the VCC's food service operation. (D.I. 60 at A-83). He did not, however, draft the religious diet policy, provide input into the policy, and he lacked authority to change the religious diet policy at VCC. (*Id.*). Moreover, there is no evidence that Senato had any knowledge that the meals served at the VCC during Ramadan violated Plaintiff's constitutional rights. As Senato stated in his declaration, the DOC offers meal accommodations to Muslim inmates during Ramadan. (*Id.* at A-83-84). He stated that "[t]he Ramadan diet is not a different diet *per se*, but a bagged breakfast meal and the regular dinner meal with additional vegetables added as a supplement." (*Id.* at A-84). And, he noted that Ramadan meals are served before sunrise and after sunset, because observant Muslims fast during the regular prison lunch and dinner hours. Senato's statements are unrefuted. (*Id.*). Additionally, there is no evidence to support a claim against Pierce as to Count 6.

Defendants cannot be held liable under § 1983 or RLUIPA because Plaintiffs have not offered sufficient evidence for a reasonable jury to conclude that they were personally involved in the deprivation of Plaintiffs' rights to practice their religion. Nor could a reasonable jury conclude that the meals served during Ramadan were nutritionally deficient given Senato's description of the diet provided inmates during the holy month. Even when construing the evidence in the light most favorable to Plaintiffs, upon a review of the evidence of record no

reasonable jury could find that Defendants violated Plaintiffs' right to exercise their religion under the First Amendment or RLUIPA. Therefore, the Court will grant summary judgment in favor of Defendants and against Stevenson on Count 6 of the Amended Complaint.

## IV. CONCLUSION

For the above reasons, the Court will: (1) deny Stevenson's motion for summary judgment (D.I. 75); and (2) grant Defendants' motion for summary judgment (D.I. 76).

An appropriate order will be entered.